```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
KARLA M. MALDONADO,

                    Plaintiff,                07-CV-6439

          v.                                  DECISION
                                              and ORDER
MICHAEL J. ASTRUE, Commissioner
of Social Security

                    Defendant.
_____
```

## Introduction

     Plaintiff, Karla M. Maldonado ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), Steven D. Slahta, denying her application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

     The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, on the grounds that the Commissioner's decision was erroneous. The Court finds that the decision of the Commissioner, for the reasons set forth below, is supported by substantial evidence, and is in accordance with applicable law. Therefore, the

Commissioner's motion for judgment on the pleadings is hereby granted and the Plaintiff's motion is denied.

## BACKGROUND

On February 12, 2004 the Plaintiff, a 44 year old former clerk, cashier/clerk, and a license clerk, filed an application for Supplemental Security Income. Plaintiff claimed disability since December 27, 1999, due to depression, poor leg circulation, back pain, and leg pain. Plaintiff had on several previous occasions applied for Social Security Disability Benefits and was denied. On each denial, she did not request a hearing before an Administrative Law Judge (ALJ).

In this instance, Plaintiff filed a timely request for a hearing which was held on May 26, 2005 in Rochester, N.Y., before ALJ Steven D. Slahta. Plaintiff appeared, with counsel, and testified at the hearing. In a decision dated June 24, 2005, the ALJ determined that the Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied plaintiff's request for review on July 6, 2007. On September 6, 2007, Plaintiff filed this action.

## DISCUSSION

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405 (g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a

claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).  Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo).  The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).  The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12 (c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which

would entitle him to relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ in his decision found that the Plaintiff was not disabled within the meaning of the Social Security Act.  In doing so, the ALJ adhered to the Social Security Administration's 5-Step sequential evaluation analysis for evaluating appointments for disability benefits. <u>See</u> 20 C.F.R. § 404.1520.  The 5-step analysis includes the following inquiries: (1) if the claimant is performing substantial gainful activity, he is not disabled; (2) if the claimant is not performing substantial gainful work, his impairments must be "severe" before he can be found to be disabled; (3) if the claimant is not performing substantial gainful activity, and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) if not, the next inquiry is whether, considering the claimant's residual functional capacity, the claimant's impairment(s) prevents him from doing past relevant work; (5) if the claimant cannot perform past relevant work, but he can perform other work existing in substantial numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920 (a)(4)(i)-(v).

Under Step 1 of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity for the relevant period. (Transcript of Administrative Proceedings at 18) (hereinafter "T."). At Step 2, the ALJ found that the Plaintiff had the "severe" impairments of degenerative disc disease, obesity, peripheral arterial disease, diabetes, and depression. Id. The ALJ then found that the impairments suffered by the Plaintiff did not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (T. at 19). At Step 4, the ALJ found that the Plaintiff had the residual functional capacity to perform sedentary work. Id. The ALJ qualified this assessment by adding, "the claimant has the following exertional and non-exertional limitations: she must have a sit/stand option; she can do no more than occasional postural movements, but she can do no climbing; she cannot work around environmental hazards; and she can do no more than unskilled, low stress work, defined as consisting of one-to-two-stop instructions, routine repetitive work, working primarily with things, rather than people and entry level work." (T. at 25-26). Finally, the ALJ found that although she could not perform any past relevant work, considering her age, "younger individual 18-44," education, high school, and transferable skills from previous work, Plaintiff had the ability to perform a significant range of sedentary work which was available in significant numbers in the national economy. (T. at 26). He specified that the Plaintiff was able to work as an office helper (1,400 jobs regionally, 313,000

jobs nationally) or as a dowel inspector (300 jobs regionally, 144,000 nationally). Id. The ALJ thus concluded that the Plaintiff was not disabled within the meaning of the Social Security Act.

Based on a review of the entire record, including the medical evidence, I find that there was substantial evidence in the record to support the ALJ's decision that the Plaintiff was not disabled within the meaning of the Social Security Act.

### A. **The ALJ's decision is supported by the medical evidence in the record.**

Plaintiff's application alleged an onset of disability on December, 27 1999. (T. at 72, 18). Plaintiff did not suffer a specific injury, but was admitted to the emergency room on December 30, 1999 with mild diabetic ketoacidosis and abdominal pain and was treated for elbow pain and swelling, diagnosed as epicondylitis, on March 31, 2000, which she claimed began in December, 1999 (T. at 188-189, 220). Plaintiff suffers from diabetes, controlled with Glucophage, however plaintiff admitted that she did not check her blood sugar regularly. (T. at 308, 426). Over the relevant time period, Plaintiff was also referred to a nutritionist for obesity, and counseled to exercise and refrain from smoking and drinking. (T. at 298, 300-305).

Medical records from Plaintiff's treating physician, Dr. Shivender Thakur, dating from January 2001 to May 2005, show that Plaintiff began to complain of back pain on May 4, 2001. (T. at 311). Dr. Thakur prescribed Naprosyn, heat, back exercises and referred her to physical therapy. Id. She was not given narcotics

because of a chemical abuse problem. (T. at 308-310). Plaintiff received physical therapy, which was not ultimately helpful, and had a discotomy on July 19, 2001 after an MRI reveled a paracentral disc herniation at L4-5. (T. at 222, 208-209).

Post-operatively, Plaintiff experienced pain diagnosed as radiculitis, but her condition was noted to be improving. (T. at 216). She underwent physical therapy and continued to see Dr. Thakur who continued to prescribe Ibuprofen. (T. at 222-224, 295).

Plaintiff was also treated by psychiatrist Mahipal Chaudhri. (T. at 325-342, 387-389). In an initial examination on January 21, 2002, Dr. Chaudhri diagnosed Plaintiff with major depression and possible dysthymia with a global assessment of functioning score of 50-60, representing moderate symptoms. (T. at 342; See also Commissioner's brief at 10). She was prescribed Prozac and Wellbutrin and later Neurontin and Trazodone. (T. at 342, 340). Dr. Chaudhri saw Plaintiff once a month and, on occasion, noted her continued depression and anxiety throughout a four year period. (T. at 325-342, 387-389). However, he did not indicate any significant change in diagnosis or treatment. (T. at 325-342, 387-389). Dr. Thakur also wrote on multiple occasions that the Plaintiff's depression was under good control with Prozac, Neurontin and Trazodone. (See T. at 295, 307-8).

Dr. Chaudhri filled out a disability form for the State of New York in which he stated that the Plaintiff was "cooperative," had "fluent" speech, thought and perception, had "fair" insight and

Page 7

judgment, and had "o.k." attention and concentration, memory, orientation, information and ability to perform calculations. (T. at 328). Dr. Chaudhri opined that the Plaintiff, during an episode of depression, "would not be able to function" and that these episode may occur 4-5 times a year. (T. at 326, 329). However, according to his treatment notes, and the notes of Dr. Thakur, her episodic depression was under control through medication. (T. at 325-342, 387-389, 295, 307-308).

In addition to her treating physicians, Plaintiff was evaluated by several consultive physicians for her mental and physical health. On March 22, 2002, Plaintiff saw Dr. Melvin Zax. (T. at 231). Dr. Zax noted that Plaintiff was overweight, has chronic diabetes, back pain, and poor circulation, but was coherent, had normal gait, and had intact attention and concentration. (T. at 231-235). Dr. Zax diagnosed Plaintiff with depression, but he opined that she would benefit from going back to work. (T. at 234-235).

On March 25, 2002, Plaintiff saw Dr. Samuel Balderman who noted that her gait and stance were normal and she did not need assistance in getting on or off the examination table, changing, or getting up from her chair. (T. at 237). He also indicated that Plaintiff had a full range of motion in her upper and lower extremities, cervical and thoracic spine exams were normal, and lumbar spine exams showed full flexion and full lateral movements with no spasm or point tenderness. (T. at 238). Dr. Balderman

stated that her prognosis was "stable" but that she had a "marked limitation in walking due to peripheral vascular disease." (T. at 239). On September 23, 2003, Plaintiff had a follow-up examination with Dr. Balderman in which he made similar observations and stated that she had "moderate limitations in standing, sitting, climbing and carrying due to poor weight control and reconditioning...[and a] marked limitation in walking due to claudication in the lower left extremity." (T. at 276).

Plaintiff also saw Dr. Christine Ransom, on September 23, 2003, who diagnosed her with major depression with a prognosis of "fair to good with active medication management." (T. at 272). Dr. Ransom recommended continued treatment with Dr. Chaudhri. (T. at 272). Dr. Peter Haritatos diagnosed Plaintiff with chronic lower back problem, diabetes, and suspected peripheral arterial disease because of which he opined she was "moderately restricted" from lifting, walking, climbing, standing and pushing. (T. at 347). Dr. John Thomassen, also examined Plaintiff and diagnosed depression with a "guarded" prognosis, but noted that she could perform rote tasks and follow simple instruction. (T. at 351-352).

A review of the medical evidence indicates that Plaintiff was experiencing pain and suffering from depression, diabetes, obesity, and peripheral arterial disease, which are severe impairments, as determined by the ALJ. However, the medical evidence, from her treating physicians, indicates that her impairments were mostly controlled through medication. Likewise, the diagnoses and

prognoses of the consultive physicians were consistent with those of her treating physicians. Although her treating physician, Dr. Thakur, stated in a disability form, completed on May 24, 2005, that the plaintiff was "not able to work," he further indicated that she was able to lift and carry 10 pounds frequently, moderately limited in mental functioning, although severely limited in concentration, she could occasionally climb, balance, kneel, crouch, crawl, and stoop, was unlimited in manipulative functions and unlimited in communications. (T. at 397-399). This assessment, and the other medical evidence in the record, taken together, show that while she has some pain and limitations due to her impairments, these limitations are not severe enough for her to be considered disabled within the meaning of the Social Security Act. There is sufficient medical evidence in the record to support this conclusion.

**B.    The ALJ properly concluded that the Plaintiff had the residual functional capacity to perform a sedentary work.**

The ALJ determined that the Plaintiff could perform sedentary work which involved lifting no more than 10 pounds, had a sit/stand option, occasional postural movements, no climbing, no exposure to environmental hazards, was unskilled, low stress, had one-to-two-stop instructions, routine repetitive work done primarily with things instead of people, and which was entry level work. (T. at 25-26). This assessment is consistent with the evaluations of her treating physicians and the consultive physicians.

Dr. Thakur's evaluation shows that plaintiff can lift 10 pounds, had standing and walking limitations requiring a sit/stand option, can occasionally perform postural movements, and is, primarily, moderately limited mentally. (T. At 391-399). While Dr. Thakur noted that her concentration was severely limited, her treating psychiatrist stated that her concentration was "o.k." (T. at 391, 328). Additionally, the consultive physicians noted that her concentration was "intact" or "moderately limited." (See e.g., T. at 233, 242, 271). Likewise, the consultive physicians noted only moderate physical limitations. (See e.g., 236-239, 273, 243-247).

The Plaintiff's testimony also supports the ALJ's decision that she could perform sedentary work.  Plaintiff testified that she experiences chronic pain, but that she visits, plays games and eats meals with friends, she drives, she does light work around the house including dishes, cooking and vacuuming, and she shops for groceries with the help of her children. (T. at 414-424, 425, 431). She also testified that she took her children camping the year prior to the hearing. (T. at 430). Plaintiff's testimony is consistent with the medical evidence and the determination that she is capable of performing sedentary work with the exertional and non-exertional limitations outlined by the ALJ.  The ALJ determined that the Plaintiff's subjective complaints of pain and her alleged limitations were not fully credible and he correctly evaluated her testimony together with the objective medical evidence to conclude

that she was not disabled.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

## **CONCLUSION**

For the reasons set forth above, this court finds that the record contains substantial evidence to support the ALJ's decision that the Plaintiff was not disabled within the meaning of the Social Security Act.  Therefore, the Commissioner's motion for judgment on the pleadings is granted, the Plaintiff's motion is denied, and the Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
    MICHAEL A. TELESCA
United States District Judge

Dated:  Rochester, New York
        October 21, 2008